Carl E. Person
Attorney for Defendants
325 W. 45th Street – Suite 201
New York NY  10036-3803
Telephone:   (212) 307-4444
Facsimile:   (212) 307-0247
carlpers@ix.netcom.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
                                           :

**DIMARE HOMESTEAD, INC.**            :       **ECF CASE**
**and DIMARE RUSKIN, INC.,**          :

                                       :       **09-cv-6644 (PKC)**

                   **Plaintiffs,**     :

                                       :       **ANSWER WITH**
              - against -        :       <u>**COUNTERCLAIM**</u>

                                       :

**THE ALPHAS COMPANY OF NEW YORK, INC.,** :
**PETER ALPHAS and**                     :
**YANNI ALPHAS a/k/a JOHN ALPHAS,**     :

                                       :

                **Defendants.**     :

                                       :
------------------------------------------------------------------------x

        Defendants, **The Alphas Company of New York, Inc.** (the "Alphas Company"),

**Peter Alphas,** and **Yanni Alphas a/k/a John Alphas** ("Yanni Alphas"), collectively referred to

as the "Defendants", as and for their answer to the complaint dated July 24, 2009 (the

"Complaint") of Plaintiffs DiMare Homestead, Inc. ("Homestead") and DiMare Ruskin, Inc.

("Ruskin"), respectfully allege as follows:

          1.        ADMIT each of the allegations in ¶ 1 of the Complaint.

          2.        ADMIT each of the allegations in ¶ 2 of the Complaint.

          3.        ADMIT each of the allegations in ¶ 3 of the Complaint.

          4.        ADMIT each of the allegations in ¶ 4 of the Complaint.

5.　　　ADMIT that Alphas Company is a New York corporations with its principal place of business in Bronx, New York and is licensed as a PACA dealer, but DENY each of the other allegations in ¶ 5 of the Complaint.  The transactions at issue were not subject to the trust provisions under PACA.

6.　　　ADMIT each of the allegations in ¶ 6 of the Complaint.

7.　　　ADMIT each of the allegations in ¶ 7 of the Complaint, but DENY that the Plaintiffs have any right to enforce the PACA trust provisions.

8.　　　DENY each of the allegations in ¶ 8 of the Complaint.

9.　　　DENY each of the allegations in ¶ 9 of the Complaint.

10.　　　DENY each of the allegations in ¶ 10 of the Complaint.

11.　　　DENY each of the allegations in ¶ 11 of the Complaint.  The invoices sent to Alphas Company were fraudulent and belated, created and transmitted many weeks after the Plaintiffs claim payment was due on the transactions, and had prices to which Alphas Company had not agreed.

12.　　　DENY each of the allegations in ¶ 12 of the Complaint.

13.　　　DENY each of the allegations in ¶ 13 of the Complaint.

14.　　　Defendants incorporate each and every allegations set forth in paragraphs 1 to 13 above as if fully set forth herein.

15.　　　DENY each of the allegations in ¶ 15 of the Complaint.

16.　　　Defendants incorporate each and every allegations set forth in paragraphs 1 to 15 above as if fully set forth herein.

17.　　　DENY each of the allegations in ¶ 17 of the Complaint on the bases that no trust fund was created or required to be created, and that Defendants did not owe Plaintiffs

$164,159 for the produce received by Alphas Company. The amount the Alphas Company owed

Plaintiffs for such produce was a total of approximately $50,353.

18.     Defendants incorporate each and every allegations set forth in paragraphs

1 to 17 above as if fully set forth herein.

19.     ADMIT that Peter Alphas was an officer and director of Alphas Company,

but DENY each of the other allegations in ¶ 19 of the Complaint. The transactions at issue were

not subject to the trust provisions under PACA.

20.     DENY each of the allegations in ¶ 20 of the Complaint.

21.     DENY each of the allegations in ¶ 21 of the Complaint.

22.     DENY each of the allegations in ¶ 22 of the Complaint.

23.     Defendants incorporate each and every allegations set forth in paragraphs

1 to 22 above as if fully set forth herein.

24.     ADMIT that John Alphas a/k/a Yanni Alphas was an officer and director

of Alphas Company, but DENY each of the other allegations in ¶ 24 of the Complaint. The

transactions at issue were not subject to the trust provisions under PACA.

25.     DENY each of the allegations in ¶ 25 of the Complaint.

26.     DENY each of the allegations in ¶ 26 of the Complaint.

27.     DENY each of the allegations in ¶ 27 of the Complaint.

28.     Defendants incorporate each and every allegations set forth in paragraphs

1 to 28 above as if fully set forth herein.

29.     DENY each of the allegations in ¶ 29 of the Complaint on the bases that

Defendants did not owe Plaintiffs $164,159 for the produce received by Alphas Company. The

amount the Alphas Company owed Plaintiffs for such produce under the "Open Price" or "Price

After Sale" agreement between Plaintiffs and Alphas Company, was a total of approximately

$50,353, which the Plaintiffs were unwilling to accept as full payment.

      30.      DENY each of the allegations in ¶ 30 of the Complaint.

      31.      DENY each of the allegations in ¶ 31 of the Complaint.

## **AFFIRMATIVE DEFENSES**

### **AS AND FOR DEFENDANTS' FIRST AFFIRMATIVE DEFENSE**

      32.      .      Plaintiffs have failed to comply with each of the following three

[i.e, "i" through "iii"] **bold/underscored** provisions of 7 U.S.C.A. § 499e(c):

```
(3) The unpaid supplier, seller, or agent shall lose the benefits
of such trust unless [i] such person has given written notice of intent
to preserve the benefits of the trust to the commission merchant,
dealer, or broker within thirty calendar days (i) after expiration
of the time prescribed by which payment must be made, as set forth
in regulations issued by the Secretary, (ii) after expiration of
such other time by which payment must be made, as the parties have
expressly agreed to in writing before entering into the
transaction, or (iii) after the time the supplier, seller, or agent
has received notice that the payment instrument promptly presented
for payment has been dishonored. The written notice to the
commission merchant, dealer, or broker shall set forth information
in sufficient detail to identify the transaction subject to the
trust. When the parties expressly agree to a payment time period
different from that established by the Secretary, a copy of any
such agreement shall be filed in the records of each party to the
transaction and [ii] the terms of payment shall be disclosed on
invoices, accountings, and other documents relating to the
transaction.
  (4) In addition to the method of preserving the benefits of the
trust specified in paragraph (3),[iii] a licensee may use ordinary and
usual billing or invoice statements to provide notice of the
licensee's intent to preserve the trust. The bill or invoice
statement must include the information required by the last
sentence of paragraph (3) and contain on the face of the statement
the following: "The perishable agricultural commodities listed on
this invoice are sold subject to the statutory trust authorized by
section 5(c) of the Perishable Agricultural Commodities Act, 1930
(7 U.S.C. 499e(c)). The seller of these commodities retains a trust
claim over these commodities, all inventories of food or other
```

```
products derived from these commodities, and any receivables or
proceeds from the sale of these commodities until full payment is
received.".
```

33.     As to the first bold/underscored provision (starting with "[i]" above), the Plaintiffs failed to give written notice to Alpha Company within 30 calendar days after expiration of the time prescribed for payment by PACA regulations.

34.     As to the second bold/underscored provision (starting with "[ii]" above), the terms of payment, as alleged by the Plaintiffs, were not disclosed on any of the invoices, accountings or other documents relating to the transaction.

35.     As to the third bold/underscored provision (starting with "[iii]" above), the Plaintiffs did not use ordinary or usual billing or invoice statements to provide notice of the Plaintiffs' intent to preserve the trust.  The invoice did not include the "terms of payment" information required by the last sentence of paragraph (3).  The terms of payment were "open price" or "price after sale", which are used interchangeably in the industry.  [See *Brutyn, N.V. v. Anthony Gagliano Co., Inc.*, WL 1959178, **2 (E.D. Wisc. 2007).]

**AS AND FOR DEFENDANTS' SECOND AFFIRMATIVE DEFENSE**

36.     The parties did not agree upon a price for the produce.  Instead, the produce was sold by the Plaintiffs to Alphas Company under an agreement to agree later (after resale of the produce by Alphas Company) upon the price to be paid by Alphas Company.

37.     This method of pricing is known in the industry as "open pricing" or as "price after sale", and these terms are interchangeable.

38.     Under this agreement to agree, as to which the parties had been operating for about 15 years, any failure to agree would be resolved by submission of the dispute to PACA mediation.

39.     The dispute was in the process of being submitted to PACA mediation when the Plaintiffs commenced this action.

## AS AND FOR DEFENDANTS' THIRD AFFIRMATIVE DEFENSE

40.     Alternatively to the Second Affirmative Defense, the parties had agreed to a price for all but one of the shipments, and this price amounted to approximately $50,353 (including the amount proposed by Alphas Company for the one shipment).

## AS AND FOR DEFENDANTS' FOURTH AFFIRMATIVE DEFENSE

41.     Alphas Company never agreed to any shipping fees.  Alphas Company always picked up the goods with its own truckers and never paid any shipping fees to the Plaintiffs or to any truckers retained by the Plaintiffs.

42.     Alphas Company had picked up all but one of the shipments, and had not authorized the Plaintiffs to ship the one shipment using any trucker other than Alphas Company's trucker.

## AS AND FOR DEFENDANTS' FIFTH AFFIRMATIVE DEFENSE

43.     Some of the produce was of such low quality that it could not be resold and had to be thrown away.

**AS AND FOR DEFENDANTS' SIXTH AFFIRMATIVE DEFENSE**

44.        Alphas Company did not order some of the produce.  It was shipped by Plaintiffs to Alphas Company without any prior order therefor.

**AS AND FOR DEFENDANTS' SEVENTH AFFIRMATIVE DEFENSE**

45.        Alphas Company and Plaintiffs had a custom and usage existing between them for a period of about 15 years which included the following terms and condition for their transactions, unless agreed to the contrary:

A. Alphas Company picked up produce itself and did not use any trucking facilities owned or employed by the Plaintiffs.

B.        Shipments to Alphas Company were made on an "Open Price" or "Price After Sale" basis (which terms are interchangeable), which means that the parties had to agree upon a price after the resale (or destruction) of the produce by Alphas Company, and upon any failure to agree in price the parties used PACA arbitration to determine the price for them. PACA maintains substantial records of produce prices in the various produce markets throughout the United States, and this information is used by PACA to set prices for submitting parties when they are unable to agree to a price.

C.        Prior Open Price or Price After Sale transactions between Plaintiffs and Alphas Company did not create any PACA trust fund for the resale proceeds.

## AS AND FOR DEFENDANTS' EIGHTH AFFIRMATIVE DEFENSE

46.     Non-merchantable quality of produce shipped to Alphas Company. Alphas Company did not buy produce of merchantable quality from Plaintiffs.  Instead, Alphas Company was a way that Plaintiffs sold their non-merchantable quality of tomatoes in the New York produce market, as to which the market price, if any, was ever changing, and at time non-existent. The custom and usage between Plaintiffs and Alphas Company resulted from the quality of produce and these market conditions.

## <u>COUNTERCLAIM</u>

## AS AND FOR DEFENDANTS' COUNTERCLAIM

### (Breach of Contract)

47.     Alphas Company entered into an oral agreement with the Plaintiffs for the sale of low-quality tomatoes to Alphas Company on "Open Price" or "Price After Sale" terms, in which the parties agreed to agree (after resale or destruction of the produce by Alphas Company) upon the price to be paid, if any, for the produce.

48.     This oral agreement did not include any right of the Plaintiffs to make any of the transactions subject to the PACA trust fund remedy.

49.     The reason for this is that the parties do not know the price at any time, and have to agree to a price after resale (or destruction) of the produce by Alphas Company, or employ a third party (usually PACA) to set the price for the parties if they are unable to agree. There are no invoices setting for the price of the product until long after the produce has been

delivered, making the use of the PACA trust fund technically impossible under PACA rules.  See ¶¶ 32-35 above.

50.      Plaintiffs breached this agreement by filing their Complaint against the Defendants, wrongfully asserting a lien and obtaining a preliminary injunction to attach bank accounts maintained by Alphas Company in an amount of $122,000, and by refusing to release the attachment after having seen the evidence.

51.      Citibank is holding more than $80,000 of moneys belonging to Alphas Company and insists that it (Citibank) has the right to withhold two times the amount of the $50,353 reduced amount determined by the Court by Order dated July 30, 2009.

52.      Alphas Company has been injured by this wrongful assertion of lien and wrongful attachment and continued withholding of moneys in the Citibank account, through the inability of Alphas Company to meet payroll for one payroll period, the return of checks as "unpaid" given to other suppliers, with the result that they are less willing to do business with Alphas Company except on a C.O.D. basis; and the credit rating of Alphas Company has been injured without justification, causing higher costs of product, less favorable payment and credit terms, higher employee costs, and reduced profitability to Alphas Company.

53.      Alphas Company has been damaged to the extent of $250,000, with the precise amount of such damages to be proven with certainty at the time of trial.

54.      Alphas Company is entitled to attorneys' fees, pre-judgment interest, and costs.

55.      The activities of the Plaintiffs are egregious, intentional misconduct (or, alternatively, grossly negligent conduct) and intended to put Alphas Company out of business unless they paid moneys to the Plaintiffs to which they were not entitled and is closely related to

extortion and unlawful coercion, and to adversely affect the numerous other suppliers with whom Alphas Company does business.

56.      The activities of the Plaintiffs in wrongfully asserting a lien against Alphas Company and the other Defendants originated in Florida, through the creation by Plaintiffs of the false, belated invoices in which Plaintiffs asserted a PACA trust fund remedy.

57.      Alphas Company and its two Principals are each entitled to punitive damages under Florida law in an amount equal to 9 times the amount of money improperly and wrongfully demanded by the Plaintiffs, amounting to nine times the difference between $164,159 and $50,353 (or 9 times $113,806). This amounts to punitive damages of $1,024,254 for each of the Defendants.

58.      Alternatively, the activities of the Plaintiffs in asserting their alleged PACA lien against Defendants, and attaching the bank account(s) of Alphas Company are actionable as an independent tort.

59.      The Plaintiffs' tortious conduct evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to Plaintiffs' civil obligations to the Defendants and other customers of the Plaintiffs, designed to destroy the customers' businesses, cause a loss of employment for employees of these customers (including Alphas Company), drive up the costs of tomatoes and tomato-based products for the consuming public, and drive up the costs for Plaintiffs' customers (including Alphas Company).

60.      The Plaintiffs' tortious conduct in wrongful assertion of a PACA lien and wrongful attachment of property is part of a pattern of conduct by the Plaintiffs directed at its thousands of customers and the customers' tens of thousands of employees who do not get paid and could lose their jobs through the wrongful assertion of PACA lien and wrongful attachment,

designed to extort money from the Plaintiffs' customers through improper use of a statute not intended to be used in transactions involving open price or price after sale terms.

61.     In addition, the PACA trust fund remedy is so extreme under law that its wrongful use by the Plaintiffs denied the Defendants their normal right to have notice of the taking of their property.  The Court, at the Plaintiffs' request, denied the Defendants any notice and opportunity to be heard prior to ordering a preliminary injunction prohibiting Defendants from using any of their property, even to defend themselves in this action brought by the Plaintiffs.

## PRAYER

**WHEREFORE,** Defendants demand the following relief:

1.  An order and judgment dismissing Plaintiffs' Complaint with costs and attorneys' fees;

2.  An order and judgment vacating the preliminary injunction entered against the Defendants and ordering Citibank and the Plaintiffs to return and release all funds attached by the Plaintiffs.

3.  An Order and judgment in favor of the Defendants on their Counterclaim, (a) for damages to Alphas Company in the amount of $250,000 or such other amount to be proven at trial; (b) pre-judgment interest on these damages; (c) punitive damages awarded against each of the Plaintiffs, in favor of each of the Defendants, in the amount of $1,024,254 for each of the Defendants, together with costs and attorney's fees as to the Counterclaim; and

4.  Such other and further relief which this Court deems just and equitable.

**Dated:   New York, New York**
**August 17, 2009**

_____

**Carl E. Person   (CP 7637)**
*Attorney for the Defendants, The Alphas Company*
*of New York, Inc., Peter Alphas and Yanni Alphas*
**325 W. 45th Street - Suite 201**
**New York, New York 10036-3803**
**(212) 307-4444**
**Email:  carlpers@ix.netcom.com**

12

## <u>Certificate of Service</u>

The undersigned hereby certifies that on this 17th day of August, 2009, the foregoing **Answer** was served on the attorneys for the Plaintiffs, by emailing and mailing same, first class and postage pre-paid, to the following:

> **Gregory Adam Brown, Esq.**
> **Law Offices of Brue Levinson**
> **747 Third Avenue – Fourth Floor**
> **New York NY  10017-2803**

A courtesy copy has also been provided by electronic transmission to the foregoing counsel, at the following email address:  ecf@blevlaw.com

_____

**Carl E. Person**

TAC_Answer_Final_F2.doc