UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DIMARE HOMESTEAD, INC. AND
DIMARE RUSKIN, INC.,

                        Plaintiffs,                      09 Civ. 6644 (PKC)

       -against-

                                                                 MEMORANDUM
                                                                 AND ORDER

THE ALPHAS COMPANY OF NEW YORK,
PETER ALPHAS AND YANNI ALPHAS a/k/a
JOHN ALPHAS,

                        Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

              Plaintiffs DiMare Homestead, Inc. and DiMare Ruskin, Inc., (the "DiMare Companies" or "DiMare") filed the instant action against The Alphas Company of New York ("The Alphas"), Peter Alphas and John "Yanni" Alphas alleging that The Alphas failed to pay for perishable commodities that DiMare sold and delivered to The Alphas in violation of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.* Pursuant to Rule 56(a), Fed. R. Civ. P., plaintiffs now move for summary judgment. For the reasons set forth below, plaintiffs' motion is denied.

BACKGROUND

              Plaintiffs the DiMare Companies are Florida corporations engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities. (Compl. ¶¶ 3-4; Pl. 56.1 ¶ 1; Def. 56.1 Resp. ¶ 1.) Both are licensed dealers under PACA. (Id.) The Alphas is a purchaser of wholesale quantities of perishable agricultural commodities, primarily tomatoes, at the Hunts Point Terminal Market in the Bronx. (Compl. ¶ 5; John S. "Yanni" Alphas Aff. ¶

3.)  The Alphas is also a licensed dealer under PACA.  (Pl. 56.1 ¶ 6; Def. 56.1 Resp. ¶ 6.)  Defendants Peter Alphas and John "Yanni" Alphas are officers and shareholders of The Alphas.  (Pl. 56.1 ¶ 7; Def. 56.1 Resp. ¶ 7.)

On July 27, 2009, DiMare filed suit against The Alphas, Peter Alphas and Yanni Alphas to enforce their rights under the trust provisions of PACA.  (Docket # 1.)  Plaintiffs seek to recover $164,159.00, the alleged balance due and owing on twenty-eight shipments of tomatoes sent to The Alphas between February 10, 2009 and May 13, 2009.  (Pl. 56.1 ¶ 2.)  Contemporaneous with the filing of the Complaint, plaintiffs filed an Order to Show Cause Why a Preliminary Injunction Should Not Issue and sought a Temporary Restraining Order.  (Docket # 3.)  This Court granted plaintiffs' Temporary Restraining Order barring The Alphas from dissipating any of its assets until further order of this Court or until plaintiffs have been paid the aggregate amount of $164,159.00.  (Docket # 3.)  On July 30, 2009, a preliminary injunction hearing was held.  At the hearing, plaintiff called no witnesses; defendants called Yanni Alphas.  In his testimony, Mr. Alphas acknowledged that The Alphas owed DiMare $50,353.00, but disputed all other sums due and explained the basis of the dispute.  Finding Mr. Alphas' testimony credible and the basis for the dispute plausible, this Court continued the injunction against The Alphas, but reduced the aggregate amount to $50,353.00.  (Docket # 14.)

Plaintiffs now move for summary judgment, alleging that there is no genuine issue of material fact that The Alphas and the individual Alphas owe DiMare the remaining $113,809.00 under PACA's statutory trust provisions.  The plaintiffs also seek dismissal of defendants' counterclaim for breach of contract.

DISCUSSION

      I.      <u>Summary Judgment Standard</u>

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, affidavits and other materials show "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  It is the movant's initial burden to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief.  A fact is material if it "might affect the outcome of the suit under the governing law . . . ."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law.  <u>Vt. Teddy Bear Co. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004).

In turn, to defeat a motion for summary judgment, the non-movant must raise a genuine issue of material fact.  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  <u>Powell v. Nat'l Bd. of Med. Exam'rs</u>, 364 F.3d 79, 84 (2d Cir. 2004) (quoting <u>Aslanidis v. U.S. Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir. 1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248.  The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party."  <u>Allen v. Coughlin</u>, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotations marks omitted) (citations omitted); <u>accord</u> <u>Matsushita Elec. Indus. Co. v.</u>

Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  In the absence of any disputed material fact, summary judgment is appropriate.  See Rule 56(a), Fed. R. Civ. P.

Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."  Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) (citing Matsushita, 475 U.S. at 587); see also Anderson, 477 U.S. at 249-50 (summary judgment may be granted if the evidence is "merely colorable" or "not significantly probative").  An "opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions."  Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 n. 14 (2d Cir. 1981) (internal quotation marks omitted).

    II.    PACA Trust

PACA was enacted by Congress in 1930 "to regulate the sale of perishable agricultural commodities."  Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc., 67 F.3d 1063, 1066 (2d Cir. 1995).[1]  Specifically, PACA was intended to encourage fair trading practices, suppress unfair and fraudulent business practices in the marketing of perishable commodities and provide various remedies for breach of contractual obligations.  See id.  In 1984, the Act was amended "to further strengthen the protections provided to produce suppliers."  A & J Produce Corp. v. Bronx Overall Econ. Dev. Corp., 542 F.3d 54, 57 (2d Cir. 2008).  Congress added section 499e(c) to PACA, "which impresses a trust in favor of the sellers on the inventories of commodities, the products derived therefrom, and the proceeds of sale on such commodities and products."  Endico, 67 F.3d at 1067 (citing H.R. REP. NO. 98-543, at 4 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 407); see 7 U.S.C. § 499e(c).  The statutory trust provision provides the seller

---

[1] The term "perishable agricultural commodity," as defined in PACA, "means any of the following, whether or not frozen or packed in ice:  Fresh fruit and fresh vegetables of every kind and character . . . ."  7 U.S.C. § 499a(b)(4).

4

"a right to recover against the purchasers, superior to all creditors, including secured creditors." Endico, 67 F.3d at 1067.

To recover the proceeds from a PACA trust, the seller or supplier must demonstrate:

> (1) The commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by the law.

A & J Produce Corp. v. Chang, 385 F.Supp.2d 354, 358 (S.D.N.Y. 2005). Here, the parties do not dispute that the commodities sold were perishable agricultural commodities, that the purchaser, The Alphas, was a licensed dealer and that the transaction involved interstate commerce. The parties do, however, dispute whether DiMare preserved their trust rights in accordance with the PACA notice requirements. The parties also dispute whether DiMare received full payment on the transactions at issue. Viewing the evidence in the light most favorable to The Alphas and the individual Alphas, as the non-moving parties, and drawing all reasonable inferences in their favor, there is a genuine issue of material fact as to whether DiMare preserved their trust rights in accordance with PACA.

A. PACA's Notice Requirements

In order to preserve their PACA trust rights, DiMare must provide The Alphas with notice in accordance with the PACA notice provisions. Under PACA, notice may be provided in one of two forms: (1) a written notice within thirty calendar days after payment was due, 7 U.S.C. § 499e(c)(3) ("the written notice method"), or (2) a printed statement on its regular

5

invoices, 7 U.S.C. § 499e(c)(4) ("the invoice method").  See A & J Produce, 385 F.Supp.2d at 361.  Here, plaintiffs rely exclusively on the invoice method of notice.

In 1995, Congress amended PACA to allow a seller to provide written notice of its intention to preserve its trust benefits on the invoices given to the buyer.  The Act provides in relevant part:

> In addition to the method of preserving the benefits of the trust specified in paragraph (3), a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust.  The bill or invoice statement must include the information required by the last sentence of paragraph (3) and contain on the face of the statement the following: 'The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)).  The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.'.

7 U.S.C. § 499e(c)(4).  The last sentence of paragraph (3), referenced above, provides:

> When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

7 U.S.C. § 499e(c)(3).

As set forth in section 499e(c)(4), proper notice under the invoice method "consists of three independent requirements."  A & J Produce, 385 F.Supp.2d at 361.  First, the bill or invoice statement must be "ordinary and usual."  7 U.S.C. § 499e(c)(4).  "Ordinary and usual billing or invoice statements" is defined in the regulations as "communications customarily used between parties to a transaction in perishable agricultural commodities in whatever form, documentary or electronic, for billing or invoicing purposes."  7 C.F.R. § 46.46(a)(5).  Second,

"the payment period must appear on the bill or invoice if it differs from the default payment period established by the regulations." A & J Produce, 385 F.Supp.2d at 361. The default payment period provided for in the regulations is "10 days after the day on which the produce is accepted." 7 C.F.R. § 46.2(aa)(5). If the parties agree to payment terms greater than 10 days after acceptance, but in no event more than thirty days after acceptance, the agreement must be in writing, filed in the records of each party to the transaction and disclosed on the invoice or bill. See 7 U.S.C. § 499e(c)(4); see also In re Atlanta Egg & Produce, Inc., 321 B.R. 746, 751 (N.D.Ga. 2005). Thirty days after receipt and acceptance of the commodities is the maximum allowable payment period provided for in the regulations. See 7 C.F.R. § 46.46(e)(2). "This limitation exists because the statute is intended to protect only those produce sellers making short-term credit arrangements." In re Atlanta Egg, 321 B.R. at 751 (citing H.R. REP. NO. 98-543 at 7, *reprinted in* 1984 U.S.C.C.A.N. at 410). Finally, "sellers must print on the bill or invoice a statement of intent to preserve the trust, the precise language of which is provided in the statute." A & J Produce, 385 F.Supp.2d at 361; see 7 U.S.C. § 499e(c)(4).

Here, there is a genuine issue of material fact as to whether the invoices at issue are "ordinary or usual," that is, whether they are "customarily used between parties to the transaction." For approximately ten years, DiMare and The Alphas have transacted business, buying and selling tomatoes. Despite this established relationship, the parties' sworn statements reflect wholly contrary views of their business arrangement, including the extent to which, if at all, invoices were utilized. According to James DiMare, the Sales and Marketing Manager for the DiMare Companies, DiMare shipped loads of tomatoes to The Alphas on terms called "delivered market prices, New York." (James DiMare Aff. ¶ 13.) Under this arrangement, the cost to The Alphas for a load of tomatoes was set on the day of delivery based on the prevailing

7

market rate for like tomatoes at the Hunts Point Market as set forth in the United States Department of Agriculture's Tomato Fax Report. (Id. at ¶ 14.) According to James DiMare, The Alphas were billed, similar to all its customers, on standard invoices. (Id. at ¶ 20.) Conversely, according to Yanni Alphas, the two companies conducted business on a "price after sale" arrangement. (John S. "Yanni" Alphas Aff. ¶ 7.) Under this arrangement, the payment terms for a load of tomatoes was unspecified at the time of delivery and established by negotiation after the tomatoes were resold by the Alphas. (Id. at ¶¶ 8-11.) Yanni Alphas asserts that in May 2009 DiMare "unilaterally established prices bearing no relation to the market place, and sent a barrage of invoices to us on all of the 2009 loads that we hadn't come to terms on." (Id. at ¶ 23.)

Additionally, the timing and pattern of the invoices sent from DiMare to The Alphas during the period at issue is unsystematic. First, with one exception, the invoices are dated as sent to The Alphas months after the payment due date set forth on the face of the invoice. For example, the invoice for tomatoes shipped on February 21, 2009, with a payment due date of March 8, 2009, was not sent until May 4, 2009, nearly two months after payment was due. (DiMare Homestead Invoices, attached at James DiMare Aff., Ex. C. p. 4.) Second, there is no uniformity with regard to when the invoices were sent by DiMare to The Alphas. For example, the invoices corresponding to two tomato shipments with the same delivery date of May 9, 2009 and payment date of May 24, 2009, were sent by DiMare on two different dates, one on June 18, 2009 and the other on June 30, 2009. (DiMare Ruskin Invoices, attached at James DiMare Aff. Ex. D. p. 4, 6.) Third, there is no discernable pattern to when the invoices were sent. For example, seven shipments of tomatoes were invoiced on May 4, 2009, one on May 13, 2009 and seven on May 20, 2009. (DiMare Homestead Invoices, attached at James DiMare Aff., Ex. C.) Finally, later shipments were invoiced before earlier shipments. For

example, the invoice for the April 29, 2009 shipment of tomatoes was sent on June 1, 2009, whereas the invoice for the later May 2, 2009 shipment was sent on the earlier date of May 22, 2009. (Id. at p. 23-24.)

CONCLUSION

For the reasons set forth above, plaintiffs' motion for summary judgment is DENIED. The parties are directed to appear for a Final Pretrial Conference on September 14, 2011 at 3:30 p.m. The parties shall file a Joint Pretrial Order by September 9, 2011 at 1 p.m.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
July 22, 2011

9